Nash, J.
 

 The Eastern part of our State contains a large body of land, called swamp lands, which, as its name imports, lies very low, and is without valúe, unless drained. After the superfluous water, however, is removed, it is exceedingly fertile and valuable, being nearly inexhaus-table by cultivation. It is therefore, obviously, the interest of each individual land-holder to have his land drained, as thereby its value in market, and as a productive fund, is greatly enhanced.' But it often, if not most frequently occurs, that the land of one man cannot be drained, without carrying the ditches through that of another. To this he may not be disposed to accede, as however certain it might be that the draining the land will contribute to the interest of all, he may not think it necessary that his land should be b.urthened with the works for that purpose. Such, however, are the extent and value of those lands, that it is a matter of national concern, they should be reclaimed. By so doing, the healthiness of the surrounding country is ultimately improved, the productive resources of the State enlarged, and its ability to support and sustain an increased population added to. Accordingly we find that as early as .the year 1795,
 
 *429
 
 the subject was brought to the notice of the Legislature, and they passed an act, taking from individuals, not only the power to refuse the privilege of draining through their lands, but the power of afterwards disturbing the owner of the drains, in their possession,, and use of them. For the law declares, that where the petetiti-oner shall have paid the assessed value of the land, “he or they, their heirs and assigns shall thereafter be vested with a good and sufficient title, in fee for the land petitioned for. “Rev. Stat. ch .40, sec. 1.
 

 This act shews how deeply the public interest is concerned on the subject. The owner is not only compelled to suffer the ditches to be dug through his land, but the land itself, so far as is necessary to the running of the ditches, is taken from him and transferred to another — an act, on the part of the Legislature, allowable only in cases, where the public interest demands it. This act, however, does not take from the parties the power to make their own agreement as to the matter, and, when they do so agree, the person entering and digging the ditches, is no more a trespasser in the one case than in the other. The difference between them, in its effects, is, that, in the one case, the interest acquired is permanent and indefeasible; in the other, its permanence depends upon the contract of the parties and the mode of evidencing that contract. If it be in parol, it is but a ñcenee, subject to be revoked by the grantor when he pleases, and by his death the licence is revoked. In this case the land of the defendant lies adjacent to and above that of the plaintiff, in the County of Chowan, and is swamp land, and the water naturally runs from the former on to the latter. In order to its successful cultivation, it requires to be drained. The public road divides the possessions of the parties. Charles Haugh-ton formerly owned the land, now the property of the plaintiff. At what time and by whom the ditches were originally dug the case does not disclose, but they were there in the Spring1 of ’38, though smaller than now.
 

 In that Spring Charles Haughton stopped up one of the ditches, which was on his own land, and after doing so pro»
 
 *430
 
 posed to the defendant to re-open it, if he would cut
 
 and
 
 o-pen all the ditches, so as to protect his land from the injury which the water running from defendant’s land on to his, oc-casioned. This proposition was declined by the defendant, on the ground, that he could drain his land, in another direction. After this, the parties did come to an understanding on the matter; and it was agreed, that the defendant should cut all his ditches, that were required, as well on his own land as on Haughton’s, and they were to be dug ■under his, Haughton’s, direction, and until he was satisfied; and-they were so dug in the Spring of ’39, and Haughton declared himself satisfied and that he had no doubt, his land would produce more abundantly than ever it did. In the Fall of that year, Haughton died, and his overseer cultivated the land until
 
 Jan. ’41,
 
 when it was sold to
 
 the plaintiff, who
 
 took immediate possession. The writ issued in March ’43. Four years, then, after the ditches were dug, elapsed, before the suit was commenced, and during that time the defendant is not apprized, as far as the case discloses, Of any dissatisfaction, on the part of the former or present owner; and without any such notice or request to abate the nuisance, he is sued. The question submitted to us is, whether, under such circumstances, the plaintiff can maintain this action. "We are decidedly of opinion he cannot; that it would be unreasonable and unjust to permit it. From the case as sent to us, we consider Haughton as the person who dug the ditches. They were by agreement dug, as he directed and under his direction, for the mutual benefit of the parties. If, after being finished,, they did not sufficiently drain the defendant’s land and protect his, Hanghton’s, from inundation, the defendant, under the direction of Haughton, was to have-them cutfarther, so that the whole control of the matter was with him. The right, thus acquired by the defendant, to drain his land through the ditches of Haughton, and over his land, was but a licence, subject to the control of Haughton, and he might at any moment, have withdrawn the licence,- and debarred the defendant from any further use of his ditches, and
 
 he-
 
 
 *431
 
 might at any moment he pleased, have filled them up, 1 Chit. Gen. Prac. 339 His death operated the same effect: it was in law a revocation of the licence, to use the ditches through Haughton’s land, and the present plaintiff mig h* have filled them up, if he had so pleased.
 

 This action is brought against the defendant for the injury, which, it is alleged, the ditches on his own land do to that of the plaintiff. . They were dug substantially by Haughton, under whom the plaintiff claims and in whose shoes,
 
 pro hac vice,
 
 he must stand. As Haughton himself could not have sued Page for an injury resulting from ditches dug by himself, without any additional act done by the defendant, so neither can Carter. Page may have no right to clean the ditches, but is not bound to fill them up. The case of
 
 Bridges
 
 v
 
 Purcell, 1
 
 Dev. & Bat. 492, has been pressed upon us as decisive of this.
 
 We
 
 do not think so.
 

 That was a petition^ under the act of Assembly, filed by the plaintiff to recover damages, occasioned to his. lands by the mill pond of the defendant. The defendant relied upon the fact, that the father of the plaintiff, under whom he, the plaintiff, claimed, had given him permission to build the dam and to raise it, as high as was necessary. Under this evidence his Honob, who tried the cause in the Superior Court of Robeson, instructed 'the jury, that the plaintiff was not entitled to the relief he asked for. This Court held the opinion to be erroneous, and ■ the Judge who delivered the opinion, observes, “ To hold that a permission, thus given, shall operate forever to the benefit of the grantee and his assigns, against the grantor and his heirs, would be in effect to permit a fee simple estate to pass under the name of an irrevocable licence,” which certainly cannot be. It was the grant of an'incorporeal heridifament, which cannot pass, but by deed of devise. This case Ave hold to' have been correctly decided, but it is very distinguishable from the present. In that caS'e’the defendant claimed, by parol, a permanent com tinuing right, not indeed in the land itself,- but to a privi-
 
 *432
 
 ledge on and upon the land of the plaintiff,, impairing, fo> that extent, the dominion of the proprietor. He claimed the exclusive use of so much of the plaintiffs land, as was submerged by the water of the pond, and he was then, under this claim of right, in the daily use of it Here, the. defendant claims-no interest in the ditches on the plaintiff’s land, nor right to use them, nor, as far as the case discloses, has lie ever, since the death of Charles Hanghton, a period of upwards of three years, to the bringing of this action, done any thing not even to the ditches on his own land to clean them out. He has literally done nothing. He had hut a li-cence, which he knew was revoked by the death of the grantor. For these reasons we think the case of
 
 Bridges
 
 v
 
 Purcell
 
 does not control this. In that case the latest English authorities on this subject are commented on by Judge Gas-toN, with an ability, which always distinguished his opinions. I refer to them now,-only for the purpose of shewing, what was the understanding of the profession and of the Judges then, upon the subject of notice and a previous demand of the removal of the nuisance, when it has been originally made by the licence of the party, seeking relief on those under whom he claims. The case of Winter against Brockwell, 8 East, 308, and of Liggins against Inge, 20 vol. Eng. C. L. Rep. 227,.are both cases of this kind. In the former, the defendant, by the parol licence of the plaintiff, had put a sky light over his area, which adjoined the house of the plaintiff, whereby the light and air were prevented from entering the house of the plaintiff through his own doors. After the completion of the sky-light, the plaintiff, becoming dissatisfied, recalled his licence and
 
 gave the defendant notice to remove it.
 
 Lord Ellenborough, who tried the cause, decided that the plaintiff could not recover, because, the sky-light was erected on the defendant’s own premises, and by the permission of the plaintiff, and that it rvould be unreasonable to permit' him to do so, without at least offering to repay the expenses, .which the defendant had incurred. Judge Gaston agrees with Lord Ellenborough
 
 in part,
 
 
 *433
 
 and says in reference to that case, “ the plaintiff’s conduct was unreasonable, and he ought not to be permitted to insist on the erections being destroyed, without some competí-sation to the defendant for the expense incurred,” but that a Court of Equity could alone ascertain thejcjuantum of expense. The ease from Eng. Com. Law. Rep. is also the case of a parol licence for-an erection or work to be made or done on defendant’s land, and the Court decided, that the plaintiff could not, after the erection was completed, upon notice and
 
 request,
 
 compel the defendant to remove the erection. The reasoning of Chief Justice TiNDaul, is justly liable to the criticism made on it in the case of
 
 Bridges
 
 v Purcell. But however fanciful the reasoning may be, the conclusion may still be sound, and it -would be rather difficult to answer some of tae cases -put by him. Upon the point, however, decided in those cases, we give no opinion, as it does not necessarily arise in this. We decide this case upon its own circumstances-; and, in the absence of all authority, we should still so hold, because 'we should think it unjust and und unreasonable, that a party, who gives a li-cence to an individual to do a particular act on his own land, which may prove injurious to him, should withdraw that li-cence, after the thing is done, and insist upon the other party being active to remove the erection and sue him for not doing so, and especially without notice.
 

 The judgment of the Superior Court of Chowan County must be reversed and a venire.de novo awarded.
 

 Per Curiam;, Judgment reversed.